## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VITALY EVGENIEVICH PILKIN,

     *Plaintiff*,

     v.

HOGAN LOVELLS US LLP,

     *Defendant*.

Civil Action No. 17-2501 (RDM)

## <u>MEMORANDUM OPINION</u>

After several previous opinions, Hogan Lovells US LLP ("Hogan Lovells US") is the sole remaining defendant in this case. The Court now considers Hogan Lovells US's renewed motion to dismiss the second amended complaint, Dkt. 63, and Plaintiff's motion for leave to file a third amended complaint, Dkt. 59. Plaintiff, proceeding *pro se*, opposes Hogan Lovells US's motion to dismiss, Dkt. 69, and Hogan Lovells US opposes Plaintiff's motion to file a third amended complaint, Dkt. 64. For the reasons set forth below, the Court will **GRANT** the motion to dismiss and will **DENY** the motion for leave to file a third amended complaint. The Court will also **DENY** Plaintiff's motion for sanctions against Hogan Lovells US. Dkt. 81.

## I.  BACKGROUND

### A.    Second Amended Complaint

Plaintiff's second amended complaint (for simplicity, the "complaint") alleges that the Russian affiliate of Hogan Lovells US—Hogan Lovells (CIS)—falsified evidence and "corrupt[ed]" Russian judges, leading to the invalidation of Plaintiff's Russian patent. Dkt. 49 at 16 (2d Am. Compl. ¶ 82). Although the complaint, like its

predecessors, is not the picture of clarity, the Court will summarize what it can glean from Plaintiff's allegations.  For purposes of the pending motions, the Court assumes the truth of Plaintiff's factual allegations.  *See Brown v. Whole Foods Mkt. Grp. Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015); *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

Plaintiff and Vladimir Vitalievich Miroshnichenko, now deceased, co-owned a Russian patent.  Dkt. 49 at 3, 5 (2d Am. Compl. ¶¶ 7(b), 14); *see also Pilkin v. Sony Interactive Ent.*, No. 17-2501, 2019 WL 224145, at *1 (D.D.C. Jan. 16, 2019) ("*Pilkin I*").  On October 6, 2011, they visited Gameland 2011, a gaming exhibition in Moscow, where Sony Computer Entertainment Inc. presented its game console, PlayStation Vita.  Dkt. 49 at 6 (2d Am. Compl. ¶ 17).  Plaintiff alleges that the PlayStation Vita infringes his patent.  *Id.*  Roughly a week after the exhibition, on October 12, 2011, "Plaintiff submitted to Sony Computer Entertainment America proof[] evidencing that" the PlayStation Vita used his patented technology.  *Id.* (2d Am. Compl. ¶ 18).  On October 14, 2011, Plaintiff informed "Russia Sony Electronics" of the infringement, *id.* (2d Am. Compl. ¶ 19), and on October 25, 2011, Plaintiff informed "Sony Computer Entertainment Europe" of the same, *id.* (2d Am. Compl. ¶ 20).  Plaintiff offered to sell the patent to each of these entities but received no reply from the Russian and European entities and received a rejection from the American entity, which explained it would "not accept any unsolicited ideas."  *Id.* (2d Am. Compl. ¶¶ 19–21).

According to Plaintiff, his "patent became a barrier to sales in Russia of [the] PlayStation Vita," *id.* at 7 (2d Am. Compl. ¶ 25), and therefore Sony Corporation and Sony Computer Entertainment Inc. "turned to Hogan Lovells (CIS)" "to get advice

whether to license the patent or not," *id.* (2d Am. Compl. ¶ 27).  Under the guidance of Hogan Lovells (CIS), Sony Electronics decided to dispute Plaintiff's patent before the Russian Chamber for Patent Disputes.  *Id.* (2d Am. Compl. ¶ 29).[1]  Hogan Lovells (CIS) represented the Sony entities in the Chamber for Patent Disputes, and, according to Plaintiff, presented "willfully falsified proof[]" and accepted payment "not only for its legal services . . . but also for . . . any possible acts[,] including illegal" actions to invalidate Plaintiff's patent and "conceal[] such criminal wrongdoing."  *Id.* at 9–10 (2d Am. Compl. ¶¶ 42–45).

On September 8, 2012, Plaintiff's patent was invalidated.  *Id.* at 9 (2d Am. Compl. ¶ 41).  Plaintiff avers that he lost his patent as a result of Hogan Lovells (CIS)'s "corrupting top executives of" the Russian patent office.  *Id.* at 11 (2d Am. Compl. ¶ 53).  He further alleges that Hogan Lovells (CIS)'s "corrupt" representation of its Sony clients continued in other fora.  The "Arbitration Court of Moscow" rejected Plaintiff's claim, as did the "Ninth Arbitration Court of Appeals," and the "Court for Intellectual Property Rights."  *Id.* at 12, 14 (2d Am. Compl. ¶¶ 61, 74).  Throughout these proceedings, Plaintiff alleges that Hogan Lovells (CIS) "knowingly and repeatedly falsified proof[]," *id.* at 13 (2d Am. Compl. ¶ 65), after accepting "bribe[s]" from Sony Electronics, *id.* at 14 (2d Am. Compl. ¶ 71), and that it "corrupt[ed] the . . . judges of three Russian courts."  *Id.* at 16 (2d Am. Compl. ¶ 82).  Notably, Plaintiff

---

[1]  The wording of the complaint is unclear as to who brought the challenge against which patent; Plaintiff refers to Sony entities "submit[ting] . . . opposition against the grant by [the Russian patent office] of the patent aimed to invalidate the patent."  Dkt. 49 at 7 (2d Am. Compl. ¶ 29). Because the following paragraphs refer to depriving Plaintiff of his patent, *see id.* at 7– 8 (2d Am. Compl. ¶¶ 30–31), the Court assumes that Plaintiff is alleging that Sony entities challenged his patent before the Chamber for Patent Disputes.

alleges that the "bribes" were paid *to* Hogan Lovells (CIS) by the firm's client, *id.* at 10, 12, 14 (2d Am. Compl. ¶¶ 47–48, 55–56, 70–71), and not *by* Hogan Lovells (CIS) to any Russian judge or official.  The complaint says nothing, moreover, about how or in what manner Hogan Lovells (CIS) allegedly "corrupt[ed]" the Russian judges.  *Id.* at 16 (2d Am. Compl. ¶ 82).

Plaintiff avers that at some time in 2014 and/or 2015, he informed Defendant Hogan Lovells US about "criminal wrongdoing" by Hogan Lovells (CIS) and that, despite that warning, none of the offending Hogan Lovells (CIS) attorneys "ha[ve] been punished or dismissed," and at least one associate has been promoted.  *Id.* at 17 (2d Am. Compl. ¶¶ 87–88, 90).  Without offering further detail, Plaintiff alleges that Hogan Lovells US "induced, abetted and aided Hogan Lovells (CIS) and Sony Electronics [in] commit[ting] . . . criminal wrongdoing."  *Id.* at 24–25 (2d Am. Compl. ¶ 131).  And, by aiding and abetting this criminal activity, Hogan Lovells US allegedly "ensured sales of . . . PlayStation Vita in Russia and thus ensured unjust enrichment of Sony Group companies and Hogan Lovells."  *Id.* at 25 (2d Am. Compl. ¶ 133).

## B.    Procedural Background

"On November 13, 2017, [Plaintiff] filed a 152-page complaint asserting claims against Sony Interactive Entertainment LLC, Sony Corporation, Hogan Lovells [US] LLP, the United States Department of Justice, and Attorney General Jefferson Sessions."  *Pilkin I*, 2019 WL 224145, at *1.  Since then, the case has hit several speed bumps, most related to questions of jurisdiction and of which parties belong before this Court.

After dismissing the claims against the Department of Justice and the Attorney General on sovereign immunity grounds on April 4, 2018, Dkt. 8, the Court entered an order instructing Plaintiff to show cause why his complaint "should not be dismissed for failure to comply with Federal Rule of Civil Procedure Rule 8" or, in the alternative, to submit an amended complaint complying with Rule 8's requirements, Dkt. 9. Plaintiff filed his first amended complaint on May 1, 2018.  Dkt. 12.  Then, in June 2018, Plaintiff sought leave to file a second amended complaint.  Dkt. 31.  Before resolving that motion, in January 2019, the Court issued an opinion dismissing Sony Interactive Entertainment for lack of personal jurisdiction.  *Pilkin I*, 2019 WL 224145, at *1.  The following month, the Court denied without prejudice Hogan Lovells US's motion to dismiss Plaintiff's amended complaint and, over Hogan Lovells US's objection, granted Plaintiff leave to file a second amended complaint.  *Pilkin v. Sony Interactive Ent., LLC*, No. 17-2501, 2019 WL 633356, at *1 (D.D.C. Feb. 14, 2019) ("*Pilkin II*").  More than a year later, on July 23, 2020, Plaintiff sought leave to file a third amended complaint.  Dkt. 59.  The next day, the Court dismissed Sony Corporation as a jurisdiction spoiler, and allowed Hogan Lovells US to renew its motion to dismiss as to Plaintiff's second amended complaint.  *Pilkin v. Sony Corp.*, No. 17-2501, 2020 WL 4286823, at *3 (D.D.C. July 24, 2020) ("*Pilkin III*").  On July 27, 2020, Plaintiff filed a notice of appeal of the Court's order dismissing Sony Corporation as a defendant, Dkt. 61, arguably divesting the Court of jurisdiction.

Notwithstanding Plaintiff's notice of appeal, on August 21, 2020, Hogan Lovells US filed its renewed motion to dismiss and its opposition to Plaintiff's motion for leave to file a third amended complaint.  Dkt. 63; Dkt. 64.  On the same day, Plaintiff moved

for reconsideration of the Court's decisions to dismiss Sony Interactive Entertainment and, separately, for reconsideration of the Court's order dismissing Plaintiff's claims against Sony Corporation as a jurisdiction spoiler.  Dkt. 65; Dkt. 66.  After the D.C. Circuit issued its mandate in November 2020, Dkt. 75, the Court denied both of Plaintiff's motions for reconsideration, *Pilkin v. Sony Interactive Ent. LLC*, No. 17-2501, 2020 WL 7339920, at *1 (D.D.C. Dec. 14, 2020) ("*Pilkin IV*"), clearing the path to consider both Hogan Lovells's motion to dismiss the second amended complaint and Plaintiff's motion to file a third amended complaint.

In recent days, Plaintiff has filed three more motions.  Two of the motions urge the Court to rule promptly on the pending motions to dismiss and to amend.  Dkt. 80; Dkt. 82.  In the third motion, Plaintiff seeks sanctions against Defendant Hogan Lovells US pursuant to Federal Rule of Civil Procedure 11(c), asserting (without meaningful analysis) that two of Hogan Lovells US's briefs, Dkt. 64; Dkt. 71, are "mostly based on deliberate misrepresentation," Dkt. 81 at 2.

## II.  ANALYSIS

### A.    Motion to Dismiss Second Amended Complaint

Hogan Lovells US contends that Plaintiff's second amended complaint should be dismissed for several reasons: (1) the complaint sounds in fraud but does not satisfy the pleading standards of Federal Rule of Civil Procedure 9(b), Dkt. 63-1 at 13–16; (2) the complaint, in any event, fails the pleadings standards of Federal Rule of Civil Procedure 8(a)(2), *id.* at 16–21; (3) the complaint fails to state an unjust enrichment claim and is time-barred, *id.* at 21–24; (4) the complaint fails to state any other claim, *id.* at 25–27; and (5) the complaint runs afoul of preclusion and principles of international comity, *id.* at 27–30.  As explained below, the Court

concludes that the complaint fails the satisfy the requirements of Rules 8(a)(2) and 12(b)(6).  As a result, the Court need not, and will not, reach the remaining issues.

Although complaints by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), even a *pro se* litigant must comply with the Federal Rules of Civil Procedure, *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement "ensures that the opposing party will receive 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Jones v. Changsila*, 271 F. Supp. 3d 9, 21 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  "Where a complaint is insufficiently focused, it places an undue burden on the defendant to answer or move[,] and it invites unnecessary delay and confusion in the proceedings."  *Achgzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 71 (D.D.C. 2015).  Rule 12(b)(6), in turn, requires dismissal if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although Hogan Lovells US maintains that many of Plaintiff's allegations involve fraud and thus implicate the "heightened pleading standards of Rule 9(b)," *Arora v. Buckhead Fam. Dentistry, Inc.*, 285 F. Supp. 3d 190, 198 (D.D.C. 2018), the Court need not parse Plaintiff's allegations line-by-line, because the complaint fails to clear even the lower hurdle of Rule 8(a)(2).

As the Court has noted with respect to Plaintiff's earlier complaints, it is "difficult to discern [Plaintiff's] theory (or theories) of relief."  *Pilkin I*, 2019 WL

224145, at \*1 (internal quotation marks omitted).  The complaint refers to numerous federal statutes, Dkt. 49 at 27–28 (2d Am. Compl. ¶ 141), but as Hogan Lovells US observes, these are criminal statutes, Dkt. 63-1 at 25, and "a private right of action" cannot usually be "infer[red]" "from 'a bare criminal statute.'"  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)); *see also Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at \*1 (D.C. Cir. 2010) (per curiam).  And, although the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, does include a private right of action, 18 U.S.C. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008), Plaintiff expressly disclaims civil remedies pursuant to RICO. Dkt. 49 at 32 (2d Am. Compl. ¶ 157).  Instead, Plaintiff asserts only three purported causes of action: unjust enrichment (Count I), *id.* at 30–32 (2d Am. Compl. ¶¶ 151–57); "pain and suffering damages" (Count II), *id.* at 32–35 (2d Am. Compl. ¶¶ 158–59); and "punitive damages" (Count III), *id.* at 35 (2d Am. Compl. ¶¶ 160–61).  Because "pain and suffering damages" and "punitive damages" are forms of relief, and not stand-alone causes of action, the Court will focus on Plaintiff's unjust enrichment claim.

Although Hogan Lovells US is the sole remaining defendant in this action, the complaint says very little about Hogan Lovells US and, instead, attempts to subject Hogan Lovells US to liability based on the alleged wrongdoing of others, most notably Hogan Lovells (CIS).  That effort fails on multiple levels.  To start, the complaint fails to set forth a coherent or sufficiently detailed explanation of what Hogan Lovells (CIS) did wrong.  It repeatedly alleges that Hogan Lovells (CIS) accepted "bribe[s]" from Sony Electronics.  Dkt. 49 at 10, 12 (2d Am. Compl. ¶¶ 47–48, 55–56).  If all the

8

complaint intends to allege is that Hogan Lovells (CIS) received payments from a client, it is hard to fathom how that violates any law or obligation, and, if the complaint intends to allege some more nefarious form of "bribery," it fails to do so with sufficient clarity to satisfy Rules 8 or 12(b)(6).

The complaint also alleges that Hogan Lovells (CIS) "corrupt[ed] top executives of Rospatent," *id.* at 12 (2d Am. Compl. ¶ 55), the "Russian analogue of the USPTO," *id.* at 3 (2d Am. Compl. ¶ 7(e)); "corrupt[ed] the Russian judges of three Russian courts," *id.* at 16 (2d Am. Compl. ¶ 82); and "knowingly and repeatedly falsified proof[]" and "concealed" relevant "circumstances" in the Russian litigation, *id.* at 18 (2d Am. Compl. ¶ 95). But nowhere does the complaint even hint at what Hogan Lovells purportedly did to corrupt these Russian officials and judges or what evidence it purportedly falsified or concealed from the Russian courts. Because the complaint fails to offer *any* non-conclusory explanation of what Hogan Lovells (CIS) purportedly did wrong, it fails to state a claim—even against Hogan Lovells (CIS). As the Supreme Court has explained, a plaintiff must plead "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Here, Plaintiff's "bare assertion of [wrongdoing] will not suffice." *Id.* at 556–57 (rejecting a claim of conspiracy against the defendant at the motion-to-dismiss stage, where plaintiff pled only lawful parallel conduct as evidence of the conspiracy).

Beyond this threshold failing, Plaintiff's theory as to why Hogan Lovells US— the sole remaining defendant in this case—should be liable for the actions of Hogan Lovells (CIS), a non-party, does not satisfy the pleadings requirements of Rules 8(a)(2) or 12(b)(6). The only allegations relevant to a theory of indirect liability are found in a

single paragraph in the section of the complaint that describes the parties to the case.

In that paragraph, Plaintiff alleges:

> **Hogan Lovells US LLP** is a limited liability partnership registered in the District of Columbia . . . . Hogan Lovells US LLP is the integral part of the international legal practice of Hogan Lovells that comprises Hogan Lovells US LLP, Hogan Lovells International LLP and their affiliated businesses, including Hogan Lovells (CIS).  [The] CEO of the international legal practice of Hogan Lovells is Stephen J. Immelt who also is CEO of Hogan Lovells US LLP. Deputy CEO of the international legal practice of Hogan Lovells is David Hudd who also is CEO of Hogan Lovells International LLP and Director of Hogan Lovells (CIS). An agency relationship exists between all integral parts of the international legal practice Hogan Lovells, including between Hogan Lovells (CIS) and domestic concern Hogan Lovells US LLP.  The liability extends to the agents of domestic concern.   Hogan Lovells US LLP participates substantially in the management and control of Hogan Lovells (CIS) since CEO of the international legal practice of Hogan Lovells is Stephen J. Immelt who also is CEO of Hogan Lovells US LLP.

Dkt. 49 at 2–3 (2d Am. Compl. ¶ 4).  These allegations, if anything, undermine Plaintiff's claim against Hogan Lovells US.

To start, Plaintiff alleges that Hogan Lovells US and Hogan Lovells (CIS) are distinct entities.  The defendant in this action, Hogan Lovells US, is a D.C. limited liability partnership, and, according to Plaintiff's own allegations, Hogan Lovells (CIS) is merely an "affiliated business[.]"[2]  In Plaintiff's view, Hogan Lovells US is nonetheless liable for the alleged misconduct of Hogan Lovells (CIS) because: (1) David Hudd is the deputy CEO of Hogan Lovells's "international legal practice," which, as pled, does not appear to be a separate legal entity; (2) Hudd is also a director of Hogan Lovells (CIS), establishing a connection between the Hogan Lovells "international legal practice" and Hogan Lovells (CIS); (3) Stephen Immelt is the CEO

---

[2] "CIS" presumably refers to the "Commonwealth of Independent States," a regional intergovernmental organization of certain post-Soviet republics.

of Hogan Lovells US and serves as the CEO of Hogan Lovells's "international legal practice," establishing a connection between Hogan Lovells US and the "international legal practice;" and (4) presumably based on the principal of transitivity, Hogan Lovells US "participates substantially in the management and control of Hogan Lovells (CIS)." These allegations fail to establish an agency relationship under D.C. law.

Under D.C. law, "'agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *FDS Rest., Inc. v. All Plumbing Inc.*, 241 A.3d 222, 237 (D.C. 2020) (emphasis omitted) (quoting *Restatement (Third) of Agency* § 1.01 (Am. L. Inst. 2006)); *see also United States v. Weitzel*, 246 U.S. 533, 542 (1918); *Davey v. King*, 595 A.2d 999, 1002 (D.C. 1991).  But even accepting Plaintiffs' allegations as true, they do not plausibly show that Hogan Lovells (CIS) is subject to the "control" of Hogan Lovells US.  The fact that Immelt and Hudd both serve in managerial capacities as part of Hogan Lovells's international practice does not show that Immelt controls Hogan Lovells (CIS) or that Hudd is subject to Immelt's direction in his capacity as a director at Hogan Lovells (CIS).  It is, of course, possible in theory that Hogan Lovells (CIS) is subject to Immelt's supervision or that it operates as the agent of Hogan Lovells US.  But nothing alleged in the complaint, even if true, comes close to establishing such a relationship.[3]  To the contrary, the complaint merely

---

[3] Nor does Plaintiff allege, or even argue, that Hogan Lovells US and Hogan Lovells (CIS) are, for relevant purposes, a single entity that does business in the United States and Russia.

suggests that that managers from different offices collaborate on certain types of international work.

Plaintiff's attempt to hold Hogan Lovells US liable for the actions of Hogan Lovells (CIS) therefore fails.  That leaves the question whether Plaintiff pleads facts sufficient to hold Hogan Lovells US liable for its own actions.  Here too, the complaint falls short.

The central (although far from the only) problem that Plaintiff faces in seeking to recover from Hogan Lovells US is that the sole cause of action that he asserts is for unjust enrichment.  Dkt. 49 at 30–32 (2d Am. Compl. ¶¶ 151–57).  He fails, however, to allege that Hogan Lovells US received any tangible benefit—directly or indirectly—as a result of the alleged wrongdoing in Russia.  In other words, he does not allege any enrichment, much less an unjust one.  *See Marsden v. District of Columbia*, 142 A.3d 525, 527 (D.C. 2016) (reciting the elements of unjust enrichment, including that the plaintiff must confer a benefit on the defendant).

The complaint includes only one non-conclusory allegation that even arguably ties Hogan Lovells US to the alleged wrongdoing committed by Hogan Lovells (CIS): that Hogan Lovells US failed to take action after Plaintiff informed it of Hogan Lovells (CIS)'s purported misdeeds.  Dkt. 49 at 17 (2d Am. Compl. ¶¶ 87–88).[4]  But that allegation has no bearing on Plaintiff's claim for unjust enrichment, and, more generally, the complaint fails to identify any legal duty that Hogan Lovells US owed to

---

[4] Plaintiff repeatedly refers to "unjust enrichment of Sony Group companies and Hogan Lovells," but in context, it seems that these statements refer to Hogan Lovells (CIS).  Dkt. 49 at 17, 23, 25 (2d Am. Compl. ¶¶ 86, 122, 133).  In any event, Plaintiff alleges no facts characterizing or supporting a direct payment or other benefit to Hogan Lovells US.

Plaintiff to take action in response to his complaint about Hogan Lovells (CIS).

Beyond that specific allegation, Plaintiff avers that Hogan Lovells US "induced,

abetted[,] and aided" the alleged wrongdoing in Russia.  *Id.* at 30 (2d Am. Compl.

¶¶ 148–49).  The Court, however, cannot accept as true "mere conclusory statements."

*Iqbal*, 556 U.S. at 678.

Giving Plaintiff the benefit of the doubt, the Court might construe some vague

allegations as directed at Hogan Lovells US.  In his description of damages for pain and

suffering, for example, Plaintiff alleges that he was slandered by "Hogan Lovells,"

without specifying which Hogan Lovells entity committed this slander.  *Id.* at 34–35 (2d

Am. Compl. ¶ 158(*l*)).  Assuming that he means to refer to Hogan Lovells US, his claim

nonetheless fails.  Plaintiff alleges that "Hogan Lovells accused Plaintiff . . . of

influencing . . . US elections using obscene language" and that "[t]he management of

Hogan Lovells ignored [Plaintiff's] request" for apology "for such slander and insult."

*Id.*  That, certainly, does not state a claim for unjust enrichment, nor does it state a

claim for slander.  Under D.C. law, a slander claim requires "'damages result[ing] from

the publication of the statements.'"  *Kemp v. Eiland*, 139 F. Supp. 3d 329, 347 (D.D.C.

2015) (quoting *Psaromatis v. Eng. Holdings I, LLC*, 944 A.2d 472, 488 n.20 (D.C.

2008)).  Yet, Plaintiff does not claim that the allegedly slanderous statement was ever

published or that any such publication caused him any cognizable injury.  Plaintiff also

directs sundry allegations at unspecified "Defendants," including that they violated his

"human rights . . . just because Plaintiff . . . lived in the Russian Federation where

corruption is rampant," Dkt. 49 at 34 (2d Am. Compl. ¶ 158(j)).  But, once again, these

allegations have nothing to do with unjust enrichment and, in any event, they are wholly

conclusory.  Plaintiff fails to identify any action by Hogan Lovells US that plausibly gives rise to a claim of unjust enrichment—or any other theory of relief.

Plaintiff, accordingly, has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Court will therefore dismiss the second amended complaint pursuant to Rules 8 and 12(b)(6).

**B.**      **Motion for Leave to File Third Amended Complaint**

Hogan Lovells US, for its part, opposes Plaintiff's motion for leave to file a third amended complaint, principally on the ground that the proposed amendment is futile.  Dkt. 63-1 at 30–31.  The Court agrees.

Federal Rule of Civil Procedure 15(a)(2) directs that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  But "leave to amend should be denied when amendment would be futile," *Sai v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including, most notably, when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  "'[R]epeated failure to cure deficiencies by amendments previously allowed,'" moreover, and "'undue prejudice to the opposing party by virtue of allowance of the amendment,'" may weigh against allowing the filing of a successive (and still flawed) amended complaint.  *Borda v. DOJ, Crim. Div.*, 306 F. Supp. 3d 306, 311 (D.D.C. 2018) (quoting *Foman*, 371 U.S. at 182).

Plaintiff's proposed third amended complaint would cure none of the shortcomings of the second amended complaint.  Plaintiff describes the changes in his third amended complaint as follows: (1) it removes Sony Interactive Entertainment as a defendant; (2) it makes "technical corrections;" and (3) it reinserts several paragraphs that were previously included in the first

amended complaint, but which Plaintiff omitted from the second amended complaint.  Dkt. 59 at

3–4.  The first two categories do not alter any of the factual allegations or legal theories

undergirding Plaintiff's complaint and need not be discussed further.

The third category of changes—reintroducing allegations that had been included in the

first amended complaint—includes conclusory allegations that Hogan Lovells US (1) "concealed

from [the Department of Justice] . . . federal offenses" it had committed, Dkt. 59-2 at 27 (Redline

¶ 133(d)); (2) "corruptly persuaded the Attorney General Loretta Lynch to influence wrongfully"

the decision whether to launch a federal investigation into Hogan Lovells and Sony, *id.* at 28

(Redline ¶ 135); and (3) failed to investigate Hogan Lovells (CIS), *id.* at 28–30 (Redline ¶¶ 136–

40).  None of these emendations speak to unjust enrichment by Hogan Lovells US, and none

would yield "a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

Accordingly, the third amended complaint would "not survive a motion to dismiss,"

and, indeed, would not improve on the second amended complaint in any material

respect.  *Ludwig*, 82 F.3d at 1099.  As such, the amendments would be futile.

As the procedural history of this case demonstrates, moreover, Plaintiff has had

several opportunities to amend his complaint and has had ample time to do so.  Hogan

Lovells US moved to dismiss Plaintiff's first amended complaint almost three years

ago, on June 1, 2018. Dkt. 25.  That motion raised many of the same arguments raised

in Hogan Lovells US's current motion to dismiss.  After Hogan Lovells US filed that

motion, Plaintiff moved for leave to file his second amended complaint, Dkt. 31, and

the Court granted that motion, Dkt 48.  Plaintiff, however, did nothing to correct the

flaws brought to his attention by Hogan Lovells US's motion.  Beyond that, Hogan

Lovells US has responded to various intervening motions, including motions to

reconsider the Court's jurisdictional decisions. Dkt. 57; Dkt. 68.  Even when a plaintiff

is proceeding *pro se* and is thus entitled to somewhat greater leeway, there comes a time

when the burden imposed on a defendant of repeatedly re-litigating the same issues

outweighs the diminishing prospect that the plaintiff will be able to state a claim.  *See*

Fed. R. Civ. P. 1 (requiring the administration of the Federal Rules of Civil Procedure

in a way that "secure[s] the just, speedy, and inexpensive" disposal of actions).  This is

such a case.

Accordingly, the Court will deny Plaintiff's motion for leave to file a third

amended complaint.

**C.      Rule 11 Sanctions**

The Court need only briefly address Plaintiff's motion for Rule 11 sanctions

against Hogan Lovells US.  Dkt. 81.  Federal Rule of Civil Procedure 11 "imposes a

duty on the signer of a pleading, motion, or paper to conduct a pre-filing inquiry of the

relevant facts and law." *Brannock Assocs. v. Capitol 801 Corp.*, 807 F. Supp. 127, 135

(D.D.C. 1992).  Under Rule 11, a court may impose sanctions if "a pleading, written

motion, or other paper" is (1) "presented for any improper purpose, such as to harass,

cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P.

11(b); (2) "the claims, defenses, and other legal contentions [therein] are [un]warranted

by existing law," *id.*; (3) "the factual contentions have [no] evidentiary support or . . .

will likely [not] have evidentiary support after a reasonable opportunity for further

investigation or discovery," *id.*, or if (4) "the denials of factual contentions are

[un]warranted on the evidence," *id.*  In deciding whether to impose Rule 11 sanctions,

courts apply "an objective standard of reasonable inquiry on represented parties who

sign papers or pleadings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 143–44 (D.D.C. 2005) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 554 (1991)).  The "imposition of Rule 11 sanctions is not something the [C]ourt takes lightly;" rather, the Court considers it "an extreme punishment for filing pleadings that frustrate judicial proceedings."  *Id.* at 144.

Plaintiff argues that Hogan Lovells US's opposition to his motion to amend, Dkt. 64, and the firm's reply in support of its motion to dismiss, Dkt. 71, are "mostly based on deliberate misrepresentation."  Dkt. 81 at 2.  This "conduct," Plaintiff claims, "result[s] . . . in harassing and causing unnecessary delay in the proceedings."  *Id*.  Such conclusory and unsupported allegations of misconduct do not come close to supporting the award of sanctions.

The Court will, accordingly, deny Plaintiff's motion for sanctions.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for leave to file a third amended complaint, Dkt. 59, **GRANTS** Hogan Lovells US's motion to dismiss, Dkt. 63, and **DENIES** Plaintiff's motion for sanctions, Dkt. 81.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:   March 12, 2021